AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Norberto Terriquez Hernandez,<br><br>*Defendant(s)* | Case No. 4:21-mj-70377-MAG |

FILED
Mar 01 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 26, 2021 in the county of Alameda in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(B)(vii) | Possession with Intent to Distribute a Controlled Substance. |

Penalties: Max penalties – 40 years prison, $5,000,000 fine, 4 years of supervised release, forfeiture.

This criminal complaint is based on these facts:

See attached Affidavit of DEA, Connor Hooper

☑ Continued on the attached sheet.

Approved as to form /s/ Benjamin Kleinman
AUSA Benjamin Kleinman

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by phone.

/s/ Connor Hooper
*Complainant's signature* DEA

SA Connor Hooper
*Printed name and title*

Date: February 26, 2021

*Virginia K. DeMarchi*
*Judge's signature*

City and state: San Jose, CA

HON. VIRGINIA K. DEMARCHI
*Printed name and title*
U.S. Magistrate Judge

# AFFIDAVIT OF CONNOR R. HOOPER
# IN SUPPORT OF CRIMINAL COMPLAINT

I, Connor R. Hooper, Special Agent of the Drug Enforcement Administration (DEA), being duly sworn, do declare and state:

**I.  INTRODUCTION**

    **A.  Purpose of Affidavit**

    1.    This Affidavit is made in support of a Criminal Complaint against NORBERTO TERRIQUEZ HERNANDEZ (hereafter, "HERNANDEZ") for one count of violating Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(vii) (Possession with Intent to Distribute a Controlled Substance).  As set forth below, there is probable cause to believe that on or about February 26, 2021, in Alameda County within the Northern District of California, HERNANDEZ knowingly possessed with the intent to distribute approximately 60 kilograms/133 pounds of methamphetamine.

    **B.  Applicable Law**

    2.    The elements of a violation of 21 U.S.C. § 841(a)(1) are as follows: the defendant (1) knowingly manufactured, distributed, dispensed, or possessed with the intent to manufacture, distribute, or dispense; (2) a controlled substance.

    3.    This complaint also charges that HERNANDEZ is responsible for possessing with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of 21 U.S.C. § 841(a)(1),(b)(1)(B)(viii), which carries a five-year mandatory minimum term of imprisonment.

    **C.  Sources of Information**

    4.    Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause for an arrest warrant for HERNANDEZ, I have not included each and every fact known to me that supports probable cause for arrest.  Rather, I have set forth only the facts that I believe are necessary to support the lawful arrest of the individual listed in this Affidavit.  This

HOOPER AFF. ISO CRIMINAL COMPLAINT

Affidavit includes information from sources that I believe to be reliable, including my conversations with local law enforcement officers and federal agents, as well as my own participation in the investigation, and my review of law enforcement database information. In addition, where statements made by other individuals (including other agents or officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part. Lastly, my interpretation and explanations of the significance of certain events, records, and statements discussed herein may evolve or change as the investigation progresses and/or new information is discovered.

## II.   AGENT BACKGROUND

5.  I am a Special Agent with the DEA assigned to the DEA Oakland Resident Office in Oakland, California, and have been so employed since July 2019. My training included a seventeen-week DEA Basic Agent Training Academy at the DEA Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations, including, but not limited to, 21 U.S.C. §§ 841 and 846. Additionally, this training included several hundred hours of comprehensive, formalized instruction in, but not limited to, narcotics investigations, drug identification, detection, interdiction, financial investigations and money laundering, informant handling, law classes, report writing, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures. I am assigned to investigate narcotics and related offenses. Prior to my current position as a Special Agent with the DEA, I worked as a Police Officer for the City of Chicago in Chicago, IL after graduating from Eastern Kentucky University with a MS in Emergency Management-Homeland Security in 2018.

6.  During the course of my employment as a DEA Special Agent, I have participated in over twelve (12) narcotics investigations either as a case agent or in a supporting role. I have

debriefed defendants, confidential sources, and witnesses who had personal knowledge regarding narcotics trafficking organizations.  I also have participated in many aspects of drug investigations including, but not limited to, undercover operations, telephone toll analysis, records research, and physical and electronic surveillance.  I have assisted in court-ordered wiretap investigations, and I have participated in the execution of numerous federal and state narcotics search and arrest warrants that resulted in the arrest of suspects and seizure of narcotics.

7. Through my training, education, experience, and my conversations with other experienced agents and officers who conduct drug investigations, I have become familiar with narcotics traffickers' use of mobile telephones and mobile telephone applications, Internet applications, social media applications, as well as narcotics traffickers' use of code words to conduct business.  Also, I have become familiar with narcotics traffickers' methods of operation, including, but not limited to, the manufacturing, distribution, storage, and transportation of narcotics, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

8. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including narcotics offenses.

### III. STATEMENT OF PROBABLE CAUSE

    **A.**    **<u>CHP Conducted a Traffic Stop of HERNANDEZ's Chevy Pickup Truck</u>**

9. On or about February 26, 2021, a California Highway Patrol (CHP) officer executed a traffic stop along westbound Highway 580 of a white-color 2011 Chevy truck with a camper shell (hereafter, "the Chevy").  The CHP officer conducted the stop after identifying numerous suspected traffic violations, including exceeding a speed of 70 mph on a highway in violation of California Vehicle Code 22356(b).  The traffic stop occurred near the Grant Line

HOOPER AFF. ISO CRIMINAL COMPLAINT

Exit on westbound Highway 580 after the freeway splits from Highway 205.[1]

10. The CHP officer activated his emergency lights to alert the driver of the Chevy to his presence. The driver of the Chevy yielded at or near the above-referenced highway exit. Soon thereafter, the CHP officer exited his vehicle and contacted the driver. The driver was the sole occupant of the vehicle and later identified as HERNANDEZ. HERNANDEZ was the registered owner of the Chevy.

11. In connection with the traffic stop, a second CHP cover unit arrived to assist the primary officer. The primary officer investigated the suspected traffic violations and ran HERNANDEZ's driver's license and vehicle registration. The primary officer also prepared a citation for three vehicle code violations, including speeding. During this time, the secondary officer used a K-9, named Apis, to patrol the perimeter of the Chevy.[2] K-9 Apis alerted to the vehicle in a manner consistent with identifying the presence of a controlled substance.

///

---

[1] I have reviewed a map of Alameda County boundaries and I believe this location on the freeway falls within Alameda County.

[2] K-9 Apis is a 2-year-old German Shepherd. Apis was trained in West Sacramento, California at the CHP Academy, specifically for the detection of illicit narcotics, patrol and handler protection. The training class provides skills necessary for the officer/handler to work as a team in the detection of illicit narcotics. The training class also encompasses training of the K-9 for handler protection as well as in the searching for, and apprehension of, suspected criminals. The training encompassed an 11-week time period, mostly completed at the California Highway Patrol Academy. During the training, the K-9 teams work in a variety of settings ranging from vehicles, houses, commercial buildings, commercial trucks, and various other settings.

Apis is trained to specifically detect four different odors: marijuana, cocaine, methamphetamine and heroin. Apis has been "proofed" off various common packaging materials such as plastic bags, tape, gasoline, latex gloves, silicone, grease, tennis balls, and plastic cellophane wrap. Apis has been trained and participated in interdiction cases throughout his career, including narcotic odor training was a total of 200 hours, which Apis completed in May of 2020.

B. **The K-9 Alerted, HERNANDEZ Consented to the Search of the Chevy, and CHP Found 60 Bags of Methamphetamine Inside**

12. After the K-9 Apis alerted, officers asked HERNANDEZ for consent to search the Chevy. HERNANDEZ provided consent. CHP officers searched the vehicle and discovered numerous boxes inside the trunk. Inside the boxes, the officers discovered white-color crystalline substances contained within Ziplock-style bags. Based on the CHP's officers' training and experience, as well as the K-9 alert, they suspected the bags contained a controlled substance, namely crystal methamphetamine. The CHP officers placed HERNANDEZ under arrest and transported him to a nearby CHP station. Soon thereafter, DEA agents arrived to interview HERNANDEZ and transported HERNANDEZ to the DEA's Office in Oakland, California.

13. Later, DEA agents conducted a presumptive field test on one of contents of one of the seized Ziplock bags. The substance tested positive for the presence of methamphetamine. DEA agents also counted and weighed the Ziplock bags. They counted approximately 60 bags that appeared to contain roughly the same amount in each bag. Each bag weighs approximately one kilogram/2.2 pounds for a total weight of approximately 60 kilograms/133 pounds. Below is a photograph of the seized bags of suspected methamphetamine:



HOOPER AFF. ISO CRIMINAL COMPLAINT

### C. Possession of Approximately 60 Kilograms of Methamphetamine Far Exceeds Any User Quantity and is Consistent with Possession with Intent to

14. In addition, based on my training and experience I know that approximately 60 kilograms of a methamphetamine is consistent with distribution-level quantities of the controlled substance. And, I believe that HERNANDEZ's possession of these high quantities is consistent with his serving as a trusted member of a larger drug trafficking network. I know that crystal methamphetamine sells in pound quantities for approximately $2,000 to $3,000 in the Bay Area. Here, HERNANDEZ possessed approximately 133 pounds of suspected methamphetamine. Therefore, HERNANDEZ was likely entrusted by other members of his drug trafficking network to transport and/or distribute contraband valued around $266,000 to $399,000.

## IV. REQUEST TO SEAL

15. The DEA's criminal investigation is ongoing. In addition, it is my belief that prematurely revealing the specific details, facts, and reasons for the search, as detailed in this Affidavit, may cause flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, and otherwise seriously jeopardize the investigation (e.g., prompting changes in behavior or notification of confederates). Accordingly, I request that the Court issue an order that the criminal complaint, this Affidavit in support of the application for criminal complaint and arrest warrant, the application for the criminal complaint and arrest warrant, and the attachments thereto, along with the order itself, be filed under seal until further order of the Court.

## V. CONCLUSION

17. Based on the facts and law provided herein, your Affiant respectfully submits that there is probable cause to believe that NORBERTO TERRIQUEZ HERNANDEZ committed a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(ii) (Possession with Intent to Distribute a Controlled Substances) in the Northern District of California on or about February

HOOPER AFF. ISO CRIMINAL COMPLAINT

26, 2021. I therefore respectfully request that this Court issue a Criminal Complaint and Warrant of Arrest.

/s/ Connor R. Hooper w/permission by VKD
CONNOR R. HOOPER
Special Agent
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me,
pursuant to Fed.R.Crim.P 4.1 and 4(d) on this 26 day of February 2021.

HONORABLE VIRGINIA DEMARCHI
United States Magistrate Judge
Northern District of California

HOOPER AFF. ISO CRIMINAL COMPLAINT