STEPANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

BENJAMIN K. KLEINMAN (NYBN 5358189)
Special Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3771
    Fax: (415) 637-3724
    Benjamin.kleinman2@usdoj.gov

Attorneys for United States of America

FILED

Mar 01 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>NORBETO TERRIQUEZ HERNANDEZ,<br><br>    Defendant. | CASE NO. 4:21-mj-70377 MAG<br><br>MEMORANDUM IN SUPPORT OF THE UNITED STATES'S MOTION FOR DETENTION<br><br>Date:   March 1, 2021<br>Time:  1:00 p.m.<br>Court:  Honorable Susan van Keulen |

    On the evening of February 26, 2021, Norbeto Terriquez Hernandez (hereinafter "the defendant"), the sole occupant and driver of a vehicle, possessed in the trunk of the car approximately 60 bags of suspected methamphetamine, weighing an approximate total of total of 133 lbs with an approximate value $266,000 to $399,000. Given the distribution quantity of methamphetamine, the Court should detain the defendant pending trial.

# BACKGROUND

## I. OFFENSE CONDUCT

On or about February 26, 2021, a California Highway Patrol (CHP) officer executed a traffic stop along westbound Highway 580 of a white 2011 Chevy truck with a camper shell (hereafter, "the Chevy"). The CHP officer conducted the stop after identifying numerous suspected traffic violations, including exceeding a speed of 70 mph on a highway in violation of California Vehicle Code 22356(b). The traffic stop occurred near the Grant Line Exit on westbound Highway 580 after the freeway splits from Highway 205.

The CHP officer activated his emergency lights to alert the driver of the Chevy to his presence. The driver of the Chevy yielded at or near the above-referenced highway exit. Soon thereafter, the CHP officer exited his vehicle and contacted the driver. The driver was the sole occupant of the vehicle and was later identified as Norbeto Terriquez Hernandez. The defendant was the registered owner of the Chevy. In connection with the traffic stop, a second CHP cover unit arrived to assist the primary officer. The primary officer investigated the suspected traffic violations and ran the defendant's driver's license and vehicle registration. The primary officer also prepared a citation for three vehicle code violations, including speeding. During this time, the secondary officer used a K-9, named Apis, to patrol the perimeter of the Chevy. K-9 Apis alerted to the vehicle in a manner consistent with identifying the presence of a controlled substance.

After the K-9 Apis alerted, officers asked the defendant for consent to search the Chevy. The defendant provided consent. CHP officers searched the vehicle and discovered numerous boxes inside the trunk. Inside the boxes, the officers discovered white crystalline substances contained within Ziplock-style plastic bags. Based on the CHP's officers' training and experience, as well as the K-9 alert, they suspected the bags contained a controlled substance, namely crystal methamphetamine. The CHP officers placed the defendant under arrest and transported him to a nearby CHP station. Soon thereafter, DEA agents arrived to interview the defendant and transported the defendant to the DEA's Office in Oakland, California.

Later, DEA agents conducted a presumptive field test on the contents of one of the seized Ziplock bags. The substance tested positive for the presence of methamphetamine. DEA agents also counted and weighed the Ziplock bags. They counted approximately 60 bags that appeared to contain roughly the same amount in each bag. Each bag weighs approximately one kilogram/2.2 pounds for a total weight of approximately 60 kilograms/133 pounds. Below is a photograph of the seized bags of suspected methamphetamine:

In addition, as is outlined in the complaint, approximately 60 kilograms of a methamphetamine is consistent with distribution-level quantities of the controlled substance, and crystal methamphetamine sells for approximately $2,000 to $3,000 per pound in the Bay Area. Here, the defendant possessed approximately 133 pounds of suspected methamphetamine. And, the defendant's possession of these high quantities, as is stated in the complaint, is consistent with his serving as a trusted member of a larger drug trafficking network. Therefore, the defendant was likely entrusted by other members of his drug trafficking network to transport and/or distribute contraband valued around $266,000 to $399,000.

On February 26, 2021, the defendant was charged, via complaint, with one count of violating Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(vii) (Possession with Intent to Distribute a Controlled Substance).

## II. CRIMINAL HISTORY

The defendant does not have any criminal convictions.

## ARGUMENT

### I. LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406. "[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)." *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *Id*. Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored. *Id*.

The Court must consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II. THE DEFENDANT IS BOTH A DANGER TO THE COMMUNITY AND A FLIGHT RISK

The nature and circumstances of the offenses charged demonstrate the danger that the defendant poses to the community, under 18 USC §§ 3142(g)(1) and (4). The defendant is charged with conspiracy to distribute heroin, cocaine, and 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii). The danger posed to the community by drug offenses is well-established. *See, e.g.*, *United States v. Zaragoza*, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008) (Spero, J.) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm.").

As this Court is aware, trafficking in narcotics harms not only those involved in the transactions but the entire community used as a marketplace for the drug trade. Methamphetamine is a potent and addictive drug with terrible psychological, medical, and social consequences. Nat'l Inst. on Drug Abuse, "Methamphetamine Abuse and Addiction," Nat'l Inst. of Heath Pub. 13-4210 (rev. Sept. 2013) at 1.[1] Methamphetamine can cause memory loss, cardiovascular damage, malnutrition. aggression, and psychotic behavior. *Id*. "Beyond its devastating effects on individual health, methamphetamine abuse threatens whole communities, causing new waves of crime, unemployment, child neglect or abuse and other social ills," including increased transmission of infectious diseases, such as hepatitis and HIV/AIDS. *Id*.

According to a recent study by the City and County of San Francisco's Methamphetamine Task Force, the devastating effects of methamphetamine trafficking are a serious local problem in the Bay Area. In its 2019 report, this task force estimated that thirty-nine percent of the estimated 24,500 people who inject drugs in San Francisco report using methamphetamine.[2] Deaths caused by

---

[1] This report is available at https://www.drugabuse.gov/publications/research-reports/methamphetamine/letter-director, and the tabs associated with it (last accessed Sept. 13, 2020).

[2] All data described in this paragraph can be found in this report, which is available at https://www.sfdph.org/dph/files/MethTaskForce/Meth%20Task%20Force%20Final%20Report_FULL.pdf (last visited Sept. 13, 2020). The United States has not located comparable data for Concord, CA.

methamphetamine overdose rose from 1.8 to 14.6 per 100,000 people between 2008-2018, an increase of 711%. Among decedents experiencing homelessness, methamphetamine was the most commonly present substance (47%). Methamphetamine use was also prevalent among those individuals in need of emergency psychiatric care (47%), and among those with at least eight prior psychiatric holds, nearly 9 in 10 reported using exclusively methamphetamine (89.1%). In 2019, methamphetamine was the most frequently involved substance in all drug arrests in San Francisco, and it is the second most used substance as reported by individuals in San Francisco's jails.

The defendant's methamphetamine trafficking exploits those addicted to the drug. Exploiting others through their addiction to methamphetamine harms not just those individuals but the entire community. The detention of this defendant will protect the community from this offense conduct – a dangerous and volatile form of criminal profiteering that puts the entire community at risk of harm.

In terms of the weight of the evidence, under § 3142(g)(2), this factor also favors detention because this is a strong case for the government. The methamphetamine was found in the trunk of the car the defendant was driving, and he was the sole occupant. The DEA agents counted approximately 60 bags total weight of approximately 60 kilograms/133 pounds. As is outlined in the complaint, the defendant was likely entrusted by other members of his drug trafficking network to transport and/or distribute contraband valued around $266,000 to $399,000.

While this factor is deemed the least important by case law, courts are still "require[d]" to consider it, and it can help establish dangerousness. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released). Likewise, evidence of the defendant's guilt "makes it more likely that he will flee," particularly in light of the term of imprisonment that the defendant potentially faces here. *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991). Specifically, the complaint charges that the defendant possessed with the intent to distribute 50 grams or more of a

mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), which carries a five-year mandatory minimum term of imprisonment. The strength of the government's case combined with the seriousness of the charge, which includes the mandatory minimum of five years in jail, makes the defendant a flight risk.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motion to detain the defendant pending trial.

DATED: March 1, 2021               Respectfully submitted,

                                   STEPHANIE M. HINDS
                                   Acting United States Attorney


                                   /s/ *Benjamin K. Kleinman*
                                   BENJAMIN K. KLEINMAN
                                   Assistant United States Attorney